Well, in this case, Mr. Kimbrew has taken two separate positions, the first of which asks that the conviction be reversed. We have argued and argue to this Court now that the allegations in count one, the count for which the defendant was acquitted, included the double jeopardy clause has been violated. We have argued rather extensively in the briefing this point, and I will leave it to the briefs at that. At a minimum, however, and I'm sure not surprisingly, we are also arguing that the sentence must be vacated and the case remanded for resentencing. On your double jeopardy claim, my understanding is that each of these counts required proof of a fact that the others did not require, and that that should end the inquiry. What's your response to that? The actual, as alleged, the count of the first count, the count for which he was acquitted, also included as part of the conspiracy the money laundering aspect, which is the same elements that are included in 1956H, which is the count of conviction. We don't believe that they require the same or different elements, because in the 371 count, one of the objectives of that conspiracy was to launder money, which is the same thing as was alleged in count 2. So we take the position that they are overlapping, exactly overlapping. Well, that's your double jeopardy argument, right? That's correct. But can you say that holds up really under the Blockburger case? I believe it does. I believe we have shown that under the Blockburger test, the count of conviction requires the same proof as the count of acquittal, and as such should be reversed. Okay. Do you want to talk about sentencing? Yes, I do. Go ahead. Of course, Prundy and Blakely have first taught us that the maximum sentence a judge may impose is that which is based on facts that reflect in the jury's verdict. After the briefing was completed in this case, of course, we had Booker decided, and what we have here is we have a defendant that was acquitted of a conspiracy and a substantive count of mail fraud, but convicted on a conspiracy to commit money laundering. He was sentenced under the then-mandatory guideline system. Given his criminal history category, that jury's verdict of conspiracy to commit money laundering would have yielded a guidelines sentence of eight months. The district court, compelled by the guidelines requirement that it take into consideration relevant conduct, added 16 levels to the jury's finding, going from eight months to 60 months. We have argued in our briefs that some of those findings of enhancement, of the enhancements, are clearly erroneous, and I'll get to that momentarily. But for now, the defendant, of course, did not object to the sentencing process at the time that he was sentenced. Blakely had not yet then been decided, and therefore, you must review for plain error, which is the subject of a great deal of debate across the country in the many circuits. I believe that that four-prong, three-prong plus a discretionary aspect of O'Connor's has been the basis for the debate. The first and second prongs, whether there was error and whether the error was plain, doesn't seem to create much argument. I don't think anyone has argued seriously that it doesn't. It is the third and fourth prongs that have given even this Court some pause. As the Court is aware, the Ameline case was vacated, and it's now awaiting en banc decision. However, under any approach, whether you – whether this Court adopts a per se remand rule or whether it focuses on a case-by-case basis as to whether the substantial rights of a defendant were affected by the outcome of the sentence, Mr. Kimbrough's sentence must be vacated. He was – he went to trial by jury. He denied every allegation that was put forth by the government, yet when the jury found him guilty, he was sentenced well above that, which was reflected – that finding that was reflected in the jury's verdict. He was denied indictment by a grand jury. He was denied proof by means of – by a standard of reasonable doubt. And he was denied a trial by jury on the enhancements that were imposed upon him. But is that all – is that relevant at all in light of Justice Breyer's opinion in Booker? Yes, sir. It is – it is quite relevant. Even Booker and Fan Fan were reversed without any analysis as to whether the outcome would have been different in resentencing. It is – it is – and it is further relevant in that while this Court, the district court in this case, was compelled to use a mandatory guideline system and was guided only by what was in the guidelines, didn't look at 3553A. I'm more concerned about your argument on the enhancements. Yes. It doesn't seem to me that the rule that you have to have an indictment and a jury finding, that may be Justice Stevens' concept and Breyer picks it up, but it's all done, as long as the guidelines are advisory and the trial judge has the authority to give these enhancements. And the bottom line is whether the sentence is reasonable. Well, actually, the trial judge, as I understand Justice Breyer's opinion, the trial judge can use those enhancements to come to a guidelines conclusion, but that guidelines conclusion is not the final inquiry. This – that's only advisory in the sense that it gives him some idea as to what he, the judge in this case, would impose under the guidelines. And we must also remember that under the mandatory guideline system, the relevant conduct concept required that he make those findings, whereas under an advisory system, he may or may not. He may still use the guidelines by way of a – an advisory basis, but the overall system cannot withstand a sentence that is in excess of the jury's verdict. I think we understand your argument. Did you want to save any time for rebuttal? Yes, sir. Okay. You've got a little over a minute. Thank you for your argument.  Ms. Rosen. I think you can focus on sentencing. Thank you. May it please the Court. I'm Amber Rosen, representing the United States in this matter. While it's true the courts now have taken several different approaches to how to apply plain error to a Booker error, I think under the unique facts of this case, I'd like to suggest that under any scenario, no remand would be necessary under the plain error standard. Wasn't there an enhancement in this case for receiving stolen property? There was. And isn't the case law pretty consistent throughout the circuits that you can't be the steal-or and the receive-or at the same time? No, I don't think that that is true, particularly under this circuit's approach. In fact, the court in Zuniga specifically declined to adopt that approach, which it had and said in that opinion that although other courts have said you can't in fact be the stealer of this property, this Court rejected that approach and instead adopted a totality-of-the-circumstances approach. And it noted in that case that Zuniga, while he had sold some property that he had not stolen, he also was the stealer of some of the property at issue. And under the totality-of-the-circumstances approach, the court suggested that there are four relevant or four primarily relevant factors, the first of which is the regularity and sophistication of the defendant's conduct. And I think there are sufficient facts in the record to support that prong of the test. For example, it's clear, I think, from the evidence that the defendant's conduct of being involved in the receipt and selling a stolen property was very regular. There were a number of schemes in this case, first the Yamaguchi scheme and the Biltmore scheme, and he even had discussions with one of the co-conspirators after the Yamaguchi scheme to continue with a scheme under a company named Kobayashi. The conduct- Kennedy, can you identify any property, stolen property, received by this defendant that he was not a principal, an aider, an abetter, or a conspirator in the theft of that property? I'm sorry, to identify the can you say that one more time? Yes. Can you identify for the panel any stolen property that this defendant received by this defendant where he was not a principal, an aider, an abetter, or a conspirator in its theft? Is that clear? Well, he – I can't, in the sense that he was – it was his role as a conspirator. He was deeply involved in the scheme. Yes. According to the jury's verdict, deeply involved in the scheme to take this property improperly. Yes. And deeply involved in its disposal. Yes. If we conclude, and I'm not suggesting the panel would, but if we were to conclude that it's improper to enhance for receiving stolen property when you were the thief, these facts fit it, don't they? Yes. That's true. Your argument is that we shouldn't. And I think that's because the precedent in this Court instructs that you should not. And I think Zuniga makes clear that it was rejecting the so-called fence test in favor of the totality of the circumstances test, and I think it's significant that Zuniga was in fact the stealer of some of the property that he stole in that particular case where they found that the enhancement applies. So that I think that it would be appropriate to find it in this case. As I was saying, the regularity of his conduct, should I continue? No. Go right ahead. Okay. I think the regularity of his conduct is really not much at issue. He began it within a couple of months of being released from prison on a very similar scheme. He then, as his co-conspirator put it, their scheme was to get as much merchandise as we can from various companies and then shut this company down and then move on to another company. And that's at the June 17th volume at pages 215 to 216. And so there was – and it was his sole source of income. The probation office report indicates that they could not verify any other employment for the defendant during this time. He was also, I think it's significant, arrested, although not charged ultimately, while this case was pending, on charges of obtaining computers by creating fictitious businesses. So there – The defendant in Zuniga had sort of a mixed situation, didn't he? Yes. There was property that had been clearly stolen by others as well as property he had stolen. Exactly. That is correct. And is there any statement in Zuniga saying we reject the test, the fence test, as you call it? I believe that there is. Let me – I'll grab the case and I'll cite it for you.  Sure. Okay. If you look at Zuniga at page 227, head note 6 – I'm sorry, 228, two approaches for determining whether this enhancement applies have developed among the circuits, and they turn on determination of whether the defendant was in the business. The first test is the so-called fence test adopted by the Fifth, Sixth, and Seventh circuits and urged here by Zuniga. Under that test, the government must show that the person who buys and sells stolen – that the defendant was a person who buys and sells stolen property and thereby encourages others to commit property crimes. The second test is the so-called totality of the circumstances test adopted by the First and Third circuits and urged here by the government. And then it discusses what that test is, and it says we adopt the totality of the circumstances test that was originally set forth by the First circuit. Defendants continuing with the test and as to how it was not clearly erroneous for the court to find that the application applied in this case, the second prong is whether the activities were sophisticated. And I think here there was ample evidence of that. The defendant created fictitious businesses, used aliases created with fraudulent documents, laundered the proceeds from the sale of the stolen property, set up answering services in order to continue the scheme of the made-up credit and trade references and used various locations for the operations. The second prong of the test is the value and size of the inventory of the stolen property. And while the defendant himself did not maintain the inventory, the evidence all told was that the defendants and his co-conspirators obtained close to $700,000 worth of stolen computers in the scheme as a whole. The third prong of the test is whether the defendant's activities encouraged and facilitated others' crimes. Again, there's substantial evidence to support this. I believe it was Williams testified that it was the defendant who taught him and the defendants how to set up the bogus companies and what to do with respect to that and that they relied on his financial savvy, especially with respect to the money laundering activities. As a result of defendants' activities, Nicholas Kralis was brought into the offense for he was the one selling the stolen computers, and he was, in fact, indicted and tried on the charges, although ultimately the judge found there wasn't sufficient evidence to support him being in there. The defendant, the testimony showed, was the one who instructed Kralis to try and structure the financial transactions and use less than $10,000 at a time. And finally, the fourth prong of the test is whether the defendant was involved in past activities involving stolen property. And of course, he did have a prior conviction, as I said, for a very similar scheme. And in fact, the Court even noted that defendants, in saying at the sentencing, and I quote, "...prior conduct that you have, which was this precise kind of offense, shows that you weren't learning any lessons from the prior conduct." So I think that the enhancement was appropriately given by the Court and that the factual record does support it. I think maybe the Court's point was if there is a guideline calculation error, perhaps remand would be necessary. And I think all of the courts that have considered that question have found that. So I would agree that if there were a guideline calculation error, the case most likely would need to be remanded regardless of the plain error analysis. I just want to make one final point, which is with respect to the plain error. That is, given that the defendant's guideline range, if properly calculated, was 51 to 63 months, I think the fact that the Court imposed a sentence at the high end of that range of 60 months demonstrates that even if it were to have the ability to apply the guidelines in a discretionary fashion rather than the mandatory regime it did send its defendant under, that it would do the same thing. And to that extent, the defendant cannot show a reasonable probability that the outcome would have been different. That is particularly true in light of the Court's giving a defendant the statute what it believed was the statutory maximum and making a point to say that it thought that the statutory maximum was appropriate. So if anything, the defendant – I'm sorry, the Court felt constrained not by the guidelines and their lack of discretion, but by what it believed was the statutory maximum constraining how high the Court could go. Thank you. Ginsburg. Counsel, I'd like you to respond to the double jeopardy argument. Sure. What I think of this Court is noted that the two crimes charged do not satisfy the Blockbuster – Blockburger test. In one, he was charged with a conspiracy to commit mail and wire fraud, which requires an agreement to commit mail and wire fraud. And in the other count, he was charged with a conspiracy to commit money laundering, which requires an agreement to commit money laundering, and those are different aspects or different elements. And that the fact that the Blockburger case, one must analyze what the elements of the offense are, and that's without regard to the proof at trial or how those charges are alleged. The fact that some of the money laundering conduct was an overt act of the mail fraud conspiracy does not relate to what the elements of those crimes are and so isn't relevant for Blockburger purposes. I think more fundamentally, what we need to remember is that the double jeopardy provision protects the defendant from three things, multiple trials for the same offense, multiple convictions for the same offense, or multiple punishments for the same offense. And there's no issue that any of those are occurring in this case. There's no question of multiple trials. There's no second. He hasn't been subject to a second trial and one isn't contemplated. He hasn't been convicted of multiple offenses. He was convicted of one. Even if there were a multiplicity issue with respect to the two charges, that's something that defendants should have brought pretrial to dismiss one of the counts, not suggesting there was a multiplicity issue. But even if there were, that didn't happen. And because he was only convicted of one offense, even if they were multiplicious, there would be no double jeopardy problem now because he was convicted of only the one, and therefore he was punished for only one offense. So the double jeopardy clause is not implicated in this case. Thank you. Thank you for your argument, counsel. Rebuttal. What is most amazing is that all the facts that have been set forth by the government with respect to Mr. Kimbrough's involvement in the scheme were presented to the jury, and they found him not guilty of the conspiracy to commit mail fraud and mail fraud. It is precisely the vice here that of the mandatory guidelines that that conduct that could not have been proved beyond a reasonable or was not proved beyond a reasonable doubt was the very basis upon which he was sentenced. Now, it is not a mandatory system anymore. It is advisory, but it is advisory only, not discretionary, I don't believe. I believe that the Fifth Circuit is wrong in that respect. The trial judge doesn't get to choose, I don't believe, the guidelines or something else. The trial judge gets to make a call based on everything, whether he wishes to use the standard, but he doesn't get to use the guidelines, do the same analysis they did under the mandatory system, and then impose the same sentence, only free to do it now without the shackles of a jury trial or proved beyond a reasonable doubt. There is no question that Mr. Kimbrough was enhanced on the receiving stolen property aspect of it improperly. He did not receive any property, even under the totality of circumstances, that he did not steal, assuming you wish to approach it that way. If you steal it, you can't receive it. And that was our argument, and the district court didn't make any, didn't get anywhere, but I believe that that was clearly erroneous. It is also clearly erroneous to enhance him for role in the offense when the offense of conviction, the money laundering count, clearly showed that it was, he was created a bank account with a false identification provided by one of the other defendants in the case, one of the ones that testified. So to increase role in the offense in the money laundering count, the count of conviction, which I believe is the only count upon which you can enhance for role in the offense, is also clearly erroneous. Thank you for your argument, counsel. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is the United States against the United States.
judges: Lay, B. Fletcher, Hawkins